David Alan Makman SBN 178195
LAW OFFICES OF DAVID A. MAKMAN
483 Seaport Court, Suite 103
Redwood City, CA 94063
david@makmanlaw.com

Attorney for Non-Party
The Valley Breeze Consulting, LLC

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE THE VALLEY BREEZE CONSULTING LLC** | **MOTION TO QUASH SUBPOENA** <br><br> **Case No: 3:26-mc-80222** <br><br> **Underlying Action:** <br><br> **Dynamic Mesh Networks, Inc. v. Cisco Systems, 2:25-cv-781-JRG (lead case) United States District Court for the Eastern District of Texas** |

MOTION TO QUASH

## I.  INTRODUCTION

Pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, Non-Party The Valley Breeze Consulting, LLC ("Valley Breeze") hereby moves to quash the subpoena that was served on it by Cisco Systems, Inc. ("Cisco") in connection with a pending patent litigation in Texas.

Kimihiko Iwamura, a Japanese gentleman in his mid 70s, is the sole proprietor of Valley Breeze. For the last 17 years or so, he has worked at Valley Breeze providing consultant services and connecting Japanese businesses with U.S. technology companies and universities. He was recently served with the subpoena that is at issue in this motion. A true and correct copy of that subpoena is provided as an exhibit to the concurrently submitted Declaration of David A. Makman in Support of Motion to Quash. The document consists of a cover letter, a subpoena and a protective order.

The subpoena is not limited in time. It has 42 "Definitions and Instructions", 10 document requests and 11 topics for deposition. Cisco demands that Iwamura-san tell them all he knows about six different companies, one individual, and seven patents. Cisco also wants to know about any and all Sharp product from the last 13 years that "incorporates any subject matter from any licensing or agreements or collaborations with Dynamic Mesh."[1] In other words, Cisco demands that Iwamura-san should read the seven patents and identify all embodiments of those patents (in whole or in part) in any product sold by Sharp. Sharp was never one of his clients. He is not a lawyer or an engineer. He is not a party to the lawsuit and has no specific recollection of the MeshDynamics deal. Cisco's demand is not reasonable.

Because the parties are so far apart and because our understanding of the nature of the subpoena power is so different, we need the assistance of the Court to quash this burdensome subpoena.

---

[1] Dynamic Mesh refers to the Plaintiff in the underlying patent litigation: Dynamic Mesh Networks, Inc., which has a d/b/a of MeshDynamics. We will use the name MeshDynamics to refer to the company in this motion.

-1-

MOTION TO QUASH

## II.    MEET AND CONFER

Before filing this motion, the parties met and conferred. We informed counsel for Cisco that the subpoena is overly broad and not limited as to time and that it provides no clear-cut way for us to understand what Cisco wants to know or is reasonably entitled to learn and demanded that Cisco withdraw the subpoena. During meet and confer, Cisco's Counsel explained that there is a 2013 license agreement between Sharp and MeshDynamics, the plaintiff in the underlying patent litigation. Cisco's counsel has apparently seen Iwamura-san's name along with documents relating to Ryoyo Electro Corporation ("Ryoyo") on emails relating to that license. For additional details regarding the meet and confer, see the concurrently submitted Declaration of David A. Makman in Support of Motion to Quash.

Counsel for Valley Breeze tried to resolve this matter, explaining that Iwamura-san has no recollection of any MeshDynamics deal, and offering that he would produce the small number of documents he found in an archive folder titled "MeshDynamics", along with a declaration authenticating them if Cisco would agree not to take a deposition and would agree that such production would constitute full compliance with the subpoena.

Cisco said it would not withdraw the subpoena, and would not withdraw its demand for deposition without first seeing the documents. Cisco also asked that Iwamura-san conduct additional searches using a list of several search terms including one that would require all of correspondence between Valley Breeze and Ryoyo. Ryoyo was a client of VBC for 7 years and, as such, it would be an undue burden if VBC were required to review all of its correspondence with Ryoyo. Moreover, if a deposition goes forward, Iwamura-san, who has no recollection of the MeshDynamics deal, would have to study the ten expansive topics of the subpoena and endeavor an exhaustive review of his archives going back to 2013. Thus, the potential burden is extensive.

-2-

MOTION TO QUASH

### III.   ARGUMENT

#### a.  This Court has the power to quash the subpoena

This Court is fully empowered to quash the subpoena, and should do so if it finds that the subpoena subjects Valley Breeze and Iwamura-san to undue burden and is not narrowly tailored to seek specific factual information. *Mattel Inc. v. Walking Mt. Prods.*, 353 F.3d 792 (9th Cir. 2003)(holding that a subpoena should be quashed if it subjects a person to undue burden, and awarding attorney fees as a sanction). See also, *Exxon Shipping Co. v. United States Dep't of Interior*, 34 F.3d 774 (9th Cir. 1994)(reversing a decision that quashed a subpoena and remanding so that the Court could apply the "substantial need" test.)

The subpoena power does not allow litigants to issue broad demands to non-parties merely on the suspicion that some relevant and admissible documents might exist somewhere in the non-party's files. To the contrary, the party issuing a subpoena has the burden of developing narrow requests to the non-party that are aimed at obtaining specific information. Moreover, they are supposed to serve the subpoena only *after* making a reasonable attempt to obtain the information from the parties to the litigation.

The decision in *United States v. Jefferson* 2025 U.S. Dist. Lexis 5650 (W.D. Wash. 2025) nicely articulates the factors that the Court should consider when deciding whether or not to quash a subpoena.[2] Specifically, a subpoena should be enforced if it is drafted to obtain "access to a discrete set of existing written materials, within the possession of the subpoenaed parties, that pertain to events and conversations that actually occurred and relate to specific subject matter". *Jefferson* at *6. In contrast, a subpoena that "adopts a particular theory of defense and then casts

---

[2] Jefferson involved a subpoena that was issued in support of a criminal prosecution. These same considerations, however, fully apply when the case is a civil one.

MOTION TO QUASH

a wide net with the goal of reeling in something to support it" should be deemed a "fishing expedition" and should be quashed. *Id.*

### b. The information that Cisco seeks is available through other means

Cisco cannot reasonably claim that the information it seeks isn't available through other means. Cisco's counsel has indicated that Iwamura-san's name came up in connection with a contract that was entered into between MeshDynamics and Sharp Corporation in 2013, and that, among other things, Cisco wants to learn more about that contract.

Such information would best be sought from MeshDynamics, which is a party to the litigation. In fact, MeshDynamics has apparently produced the small number of existing communications that involved Iwamura-san in 2013. To the extent that additional information is needed, the best source of that information would be Sharp, as Sharp signed the license, and Sharp apparently sold products pursuant to the license. As such, Cisco could, and should, have directed letters rogatory to Sharp in Japan and obtained its discovery directly from Sharp rather than serving a broad and untethered subpoena on Valley Breeze.

Valley Breeze did not work either for MeshDynamics or for Sharp. Further, Iwamura-san has no recollection of the MeshDynamics deal. His client at the time was Ryoyo, which is an entity that is referred to in the subpoena, but is not a party to the agreement. Under the circumstances, any knowledge Iwamura-san might have about Sharp or MeshDynamics's motivation to enter into a license agreement or about their thinking about any licensing terms would be inadmissible hearsay and the value of any such testimony is outweighed by the burden and inconvenience of complying with the subpoena.

### c. Cisco's Subpoena is not aimed at obtaining any specific information known to be in the possession of Valley Breeze

Here, Cisco has not narrowly tailored the subpoena to obtain information that it has reasonable grounds to believe is in the possession or custody of Valley Breeze.

-4-

MOTION TO QUASH

Rather, Cisco has cast the widest possible net in the hopes of finding something that it might be able to use later. This is not proper. If the Court will review the subpoena, it will see that Cisco is not looking for any specific discrete set of existing materials that pertain to communications that actually occurred. Rather, Cisco has cast the broadest net possible; the subpoena reads like a wish-list.

Note also that the subpoena is not limited to any particular time period and isn't even limited to the patent claims that are actually being asserted in the lawsuit. Clearly, Cisco has not made reasonable efforts to narrow the subject matter to information that is known to exist and be held by Valley Breeze.

### d. Cisco's subpoena improperly seeks expert testimony

Cisco also seems to be looking for expert testimony. Cisco is asking Iwamura-san to review seven patents and to review, in addition, Sharp's full product line. Cisco wants him to identify any and all products that embody (in full or in part) any claim of the asserted patents. That's a task for a retained expert, not for a third party consultant. Such testimony would require technical expertise and legal training that Iwamura-san does not have. In addition, Cisco is asking for testimony relating to the *Georgia Pacific* factors for evaluating reasonable royalties. See *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970). Similarly, reasonable royalty testimony would require expertise and personal knowledge that Iwamura-san does not have.

Long ago, the committee that drafted the Federal Rules of Civil Procedure determined that the subpoena power should not be used as a way to obtain expert testimony without the expense of retaining an expert. In order to prevent that from happening in the future, they explained in their 1991 amendment notes that one of the goals of F.R. Civ. P. 45 is to provide "appropriate protection for the intellectual property of witnesses" and to stop the use of subpoenas as a method of compelling evidence and information from unretained experts. See the 1991 amendment notes to F.R. Civ. P. 45.

-5-

MOTION TO QUASH

**e. Iwamura-san requests his attorney fees in connection with quashing this subpoena**

Sanctions are available under F.R.Civ.P. 45(d)(2)(B)(ii) when a subpoena is not narrowly tailored. See *Legal Voice v. Stormans, Inc.* 738 F.3d 1178, 1185 (9th Cir. 2013)(Explaining the standard for deciding when to award sanctions in connection with an overly broad subpoena). Here, Cisco is a giant, sophisticated tech company that knew or should have known that the demands it was making are beyond the reasonable scope of the subpoena power. Valley Breeze is a small one-man operation with limited means. Iwamura-san is an elderly gentleman, close to retirement age. His company should not be subject to the expense of quashing this unreasonable subpoena. The Court should sanction Cisco in the amount of $3,000.00, which represents the reasonable attorney fees in connection with this motion to quash.

**III. CONCLUSION**

The Court should QUASH this subpoena and order Cisco to reimburse The Valley Breeze Consulting, LLC in the amount of $3,000.00 plus its filing fees.

THE LAW OFFICES OF DAVID A. MAKMAN

Dated: July 24, 2026    By: /s/ *David Alan Makman*

Attorney for The Valley Breeze Consulting, LLC.

-6-

MOTION TO QUASH